SPECTOR, Judge.
Appellants, Henry V. Jenkins and Joseph J. Jenkins, seek review of a declaratory judgment holding that capital gains dividends received by a testamentary trust from investments in mutual funds are attributable to principal.
Appellants are brothers and are two of the three surviving trustees under the will of Josephine Jenkins, deceased. The third trustee is John W. Donahoo, a practicing attorney in Jacksonville, Florida. Appellants are income beneficiaries under the trust being considered herein, and it is their contention that the capital gains dividends received by the trust from its investments in mutual funds should be treated as income to the trust and thus subject to distribution to them as income beneficiaries.
Josephine Jenkins, mother of the appellants, executed her will on March 4, 1958. She died September 23, 1960. By the terms of the aforementioned will, a testamentary trust was created, included in the corpus of which was all of her stock in Jenkins Jewelry Company. The will directed that the income from the trust be paid to her three sons until the death of the last survivor of them, and that upon termination of the trust the principal and undistributed income be paid to the lineal descendants of the sons. The will further provided that the determination of the income and principal by the trustees shall be in accordance with the income and principal statutes of the State of Florida.
In early December, 1962, the executors of the estate of Josephine Jenkins sold all of the stock in Jenkins Jewelry Company for a little over $600,000, and shortly thereafter said sums were turned over to the trustees. In January of 1963, most of the proceeds of the sale of the Jenkins stock were used by the trustees to purchase shares in investment companies popularly known as “mutual funds”, two of which were themselves operated within the framework of a trust and the third being a corporation.
Subsequent to the aforesaid investment in mutual funds, the trustees from time to time received returns thereon, some of which were designated by the mutual funds as payment of dividends and others designated as distribution of capital gains. In the case of capital gains, the trustees had the election of receiving them in cash or in additional shares of the mutual fund. It appears that the first category of proceeds generated by the mutual funds, that is, the dividends, accrued to the mutual funds either from interest income or dividends received by them on shares owned by them in other corporations. In contrast, the distribution of capital gains or capital gains dividends which were paid by the mutual funds to the trust arose from profits accruing to the mutual funds directly from the sale by such investment companies of shares of stock which they had earlier purchased in other corporations. From February 19, 1963, to the date of the final judgment, the trustees received approximately $200,000 in cash dividends which amount was treated as income payable to the income beneficiaries and approximately $108,000 in capital gains which were treated as and allocated to principal in the trust. If the last named sum had been treated by the trustees as income rather than allocated to principal, then, of course, such sum too would have been distributable to the income *347 beneficiaries in addition to the first- mentioned $200,000.
At the time of the execution of the will, as well as the death of the testatrix, Section 690.06(1), Florida Statutes, F.S.A., being part of the Uniform Principal and Income Law as initially enacted by the Florida Legislature in 1937, provided:
“690.06 Corporate dividends and share rights. (1) All dividends on shares of a corporation which form a part of the principal and are payable in the shares of the corporation shall be deemed principal. Subject to the provisions of this section, all dividends payable otherwise than in the shares of the corporation itself, including ordinary and extraordinary dividends payable in shares or other securities or obligations of corporations other than the declaring corporation, shall be deemed income. Where the trustee shall have the option of receiving a dividend either in cash or in the shares of the declaring corporation, it shall be considered as a cash dividend and deemed income, irrespective of the choice made by the trustee.”
Said statutory provision was amended by Chapter 61-72, Laws of Florida, 1961, which amendment simply added to the above cited provision the following language :
“ * * * provided however, that all distributions of capital of mutual investment trusts shall be deemed principal irrespective of the choice made by the trustee.”
The trial court found that there is nothing in the will of the testatrix to indicate that she intended that Chapter 690.06 (1), Florida Statutes, F.S.A., as it existed at the time her will was executed or as it might exist at. the time of her death, should be used by the trustees to determine income and principal received from investments in mutual funds. Accordingly, the will was construed to require that income and principal be determined by the statutes in effect at the time of the receipt by the trustees of money or stock requiring such a determination. Thus, applying the provisions of Section 690.06(1) as amended in 1961, the court held that distributions made by the mutual funds and designated as capital gains are in fact principal and should be so treated and allocated by the trustees.
There are no reported cases in Florida in which the question presented in the instant case was considered. In reaching his decision, the trial judge necessarily examined and relied upon cases from other jurisdictions as well as the recognized treatise, Bogert, Trusts and Trustees, (2d Edition). The trial judge’s reasoning and conclusions were incorporated in a clear and concise opinion in which he sets out the cases upon which he relies, quoting appropriate excerpts therefrom, and setting out the ratio decidendi in a scholarly manner. Indeed, we think his opinion so clearly disposes of this question that we take the liberty of quoting his opinion and adopting it as ours, to wit:
“OPINION
“Of course, the intention of the testatrix controls the Trustees in their allocation of receipts to ‘income’ or to ‘principal’. However, it seems unrealistic to infer from the quoted provision of the will that the testatrix intended that the determination of income and principal should be ‘in accordance with the income and principal statutes’ as they existed at the date of the will or at the date of death. Though some courts have chosen one or the other of such ‘fictional’ dates the rule expressed in Section 847 (Chapter 40, page 506), Bogert, Trusts and Trustees (2nd Ed.), seems preferable. Bogert says:
‘ * * * It seems artificial and farfetched to hold that if a trust is created in 1940 the beneficiaries then acquire an equitable property interest in future corporate distributions made to the trustee, *348 so that if a stock dividend or other distribution is made at any later time during the life of the trust it must be allocated in accordance with the law existing in 1940. It seems more realistic to hold that the cestuis have a right that any corporate benefits paid to the trustee shall be allocated in accordance with the law existing at the time of distribution and its definition of capital and income, and that the right of any beneficiary to a possible future corporate distribution is a mere expectancy or hope. All cestuis accept trusts with the knowledge that the law of trust administration frequently changes. The methods for accomplishing the settlor’s purpose as to the advantages he desired to confer on his beneficiaries may be altered from time to time by action of the courts or legislatures. If a set-tlor directs that the trust fund shall be invested in legáis, the cestuis do not get property rights that the investments be made throughout the life of the trust in the then existing group of legal investments, but rather they have a right to force the trustee to follow the law as to trust investments as it exists from time to time. The views of the courts and legislatures may change on the meaning of trust principal and income, just as well as on investments. These changes are made for the purpose of achieving the settlor’s purposes as to the size and nature of the interests of the beneficiaries, and not in order to alter the trust objects.’ (Emphasis supplied)
“See also: In Re Allis’ Will, 6 Wis. (2d) 1; 94 N.W.(2d) 226, text 231 [69 A.L.R.2d 1128].
“While an ‘income beneficiary’ has a vested right in ‘income’ he has no right— vested or otherwise — in the formula or rule by which income is determined:
“In Re Arens, 41 N.J. 364, 197 Atl. (2d) 1.
“Therefore, there is no legal barrier to the construction that the testatrix intended that receipts be allocated to income or to principal in accordance with the ‘statutes’ of Florida at the time of receipt.
“There is another sound reason for holding that ‘capital gains dividends’ should be allocated to principal. It is more or less common knowledge among investors that the business of a ‘mutual fund’ is to buy, own and sell securities. Those making investments in ‘mutual funds’ know that (in effect) they are purchasing pro-rata interests at approximate market values in the securities owned by the fund. The investor knows that the net earnings of the ‘mutual fund’ derived from interest and ‘dividends’ on securities owned will be paid in cash, and that in case of sale of securities at appreciated values there will be distributions (either in shares or cash) of ‘capital gains’. This distinguishes ‘mutual funds’ from ordinary business corporations or partnerships. See In Re Estate of Brock, 420 Pa. 454, 218 A. (2d) 281.
“As a ‘capital gain dividend’ is in fact a ‘capital distribution’, the intention of the testatrix would be violated by a determination (either by the Trustees or by a Court) that the income beneficiaries were entitled to such a distribution.
“If instead of investing in ‘mutual funds’, the Trustees had invested directly in the very same securities owned by the funds, then any profit realized upon the sale of such securities would have been principal. Should there be a differance — epecially in view of the Florida Statute — because the Trustees selected an expert to make the purchases and sales for them? Obviously, there should not be.”
In addition to the question centering upon the application of the cited statute to the capital gains income of the trust herein, appellants also seek review of the lower court’s order awarding Mr. Dona-hoo’s law firm legal fees for legal work it has done in behalf of the trust. We have considered appellants’ arguments in this regard and conclude that reversible *349 error has not been demonstrated with respect to such allowance of fees. Accordingly, the final judgment is
Affirmed.
WIGGINTON, C. J., and CARROLL, DONALD K., J., concur.